The President
delivered the opinion of the Court.
The first question to be considered in, whether the suit ought to have abated by the death of the original defendant.
The Act of Assembly declares, that the death of either party, between verdict and judgment, shall not abate the suit, but that judgment shall be entered, as if both parties were living.
It is contended that this is no verdict, and, therefore, not provided for by the law. It is true, that verdicts must be certain in themselves, or such as may be made so by reference to that which is certain.
It is common for them to refer to records, or to other papers equally certain. On a demurrer to evidence, a conditional verdict, dependent upon the opinion of the Court as to the demurrer, is common and proper. So a verdict, to depend upon the opinion of the Court, on a case stated on the record, is an usual and legal proceeding. Cases agreed, are sometimes substituted in the room of special verdicts. But it is very novel to find both in the same record, and connected together. Even this might have been unexceptionable, if the verdict had referred to a state of facts before agreed to. But to supply the uncertainty of a verdict, by referring to that which, so far from being certain, did not exist for five years afterwards, cannot possibly be right. Suppose the parties had refused to agree a case, or had, in reality, disagreed about the facts; this might well have happened, and what could have been done ? The Court could not coerce them to agree upon a case, nor could any thing be substituted in its room.
We can find no cases determined in England, upon the Statute of the 8th and 9th Will. 3, c. 11, (from which our law was copied,) like the present.
Upon principle, we have no doubt, but that the administrator was not bound to cure the uncertainty in the verdict by agreeing to a state of facts, of which he might be totally ignorant, because his intestate, having more knowledge of them, had consented to do so.
*276 That he might, therefore, have abated tbe suit, if he chosen it, is clear. But he certainly might wave this advantage, and prefer a trial upon the merits, This he has done, by agreeing to a state of facts. But, then, the cause must rest upon the agreed case, independent of the verdict.
Upon the merits, there is not much difficulty. The. condemnation in the Court of Admiralty, could not bind the intestate, who was no party to the suit. If the sentence of a foreign Court of Admiralty had condemned this slave as a prize to the British, we should ha^e regarded it, though Pierce had been no party; because it would not have been in his power to have become a party. ¡So, if in this case, Pierce had put in his claim, and it had been decided against him, that decision, whilst unreversed, would have bound this and all other Courts. But the slave in question was libelled and condemned by the name of Jack Robinson, instead of that by vvbHi he was always called; and, therefore, Pierce could not be presumed to have had notice that his interest was inv olved in the suit, so as to enable him to assert his right.
The first resolution of Congress, which passed on the 25th of November, 1775, authorises vessels commissioned by that body to capture and make prizes of all armed vessels belonging to the enemy, employed in the war, and of all transports carrying troops, warlike, or naval stores, or provisions, and directs the distribution of the prizes.
The next resolution, which passed on the 23d of March, 1776, extends the right of capture to ail vessels, and to all goods, wares, and merchandise, belonging to any inhabitant of Great Britain ; but slaves are not mentioned. Whether they should be considered as goods, 8tc. within the meaning of this resolution, or whether they are to be classed with the lands, or ships and cargoes, so as by the rules of postliminium, to require the sentence of a Court of Admiralty to change the property, or whether they are to be considered in the light of moveables, and the property in them changed by capture, without condemnation, are *277 questions which the Court think unnecessary to consider, since it is not stated that the slave belonged to an inhabitant of Great Britain, so as to bring the case within the resolution of Congress ; neither is it stated that he was taken in war by the enemy, and re-captured, so as to bring it within the exception in the Act of Assembly, passed in 1782. It appears that he was the property of Pierce, and, being such, ran off, and was found on board an enemy’s vessel, where no person claimed a right to him.
The sale, therefore, in the present instance, could not divest the right of the original proprietor, however inconvenient this doctrine might prove to purchasers, for though equitable rights may, in favor of fair bona fide purchasers, for valuable consideration, and without notice, be lost by a sale, legal rights never can, unless there be fraud; as in the case of a prior mortgagee standing by, whilst another is throwing-away his money by purchasing the mortgaged premises, without giving notice of his prior incumbrance—-in cases of legal righto, the principle of caveat emptor properly applies.
Judgment affirmed. (1)

 Green v. Price, 1 Munf. 453. Taylor v. Stone, 2 Munf. 315. Taylor v. Cole, 4 Munf. 551.